**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Halbig, | No. CV09-8124 PCT DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| Navajo County, et al., | |
| Defendants. | |

Plaintiff Kevin Halbig filed a first amended complaint against Defendants Navajo County, Gary Butler (former Navajo County Sheriff), and Cheryl Powell (a Navajo County Sheriff's Office Commander), pursuant to 42 U.S.C. § 1983. Dkt. #6. Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] Dkt. #13. Halbig opposes the motion. Dkt. #17. For the reasons that follow, the Court will grant in part and deny in part the motion to dismiss.

**I.     Background.**

Halbig was an officer for the Navajo County Sheriff's Office. Dkt. #6 at 2. In May of 2008, he requested a leave of absence so he could run for the elected office of Navajo County Sheriff. *Id.* Defendant Butler was the elected Sheriff as of May of 2008, and his term was ending that year. *Id.*

---

[1] Defendants' request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

In June of 2008, Deputy Kroeger of the Sheriff's Office served Halbig with a notice of a disciplinary violation hearing. *Id.* at 3. The hearing concerned an allegation that Halbig had lied about a medical appointment. Upon receiving the notice, Halbig resigned from the Sheriff's Office. Kroeger then collected all Sheriff's Office property that had been issued to Halbig. *Id.* He neglected, however, to take a credit card the Sheriff's Office had issued in Halbig's name. *Id.* On June 3 and 4, 2008, Halbig used the credit card to purchase less than $40.00 in gas for his personal vehicle. *Id.* Halbig contends that this use was accidental, as he had forgotten that he still had the card and failed to notice that the card he used to purchase the gas was his Sheriff's Office card. *Id.* He further alleges that Sheriff's Office employees regularly used their office-issued cards for personal use and simply reimbursed the Office for any such use. *Id.* at 4.

On June 10, 2008, Defendants Butler and Powell filed a complaint with the Show Low Police Department accusing Halbig of fraudulently using the credit card. *Id.* On July 22, 2008, two detectives from the Show Low Police Department arrested Halbig for violation of A.R.S. § 13-2105(A)(1) (fraudulent use of a credit card). *Id.* at 5. Shortly after he was arrested, a press release concerning the arrest was delivered to local newspapers. *Id.* at 6.

Halbig was never prosecuted as there was no evidence of criminal intent. *Id.* Halbig alleges, however, that he lost the primary election because of the arrest and press coverage. *Id.* He further contends that he has "been 'blacklisted' by law enforcement employers and other employers" who refuse to hire him because of his arrest record. *Id.* at 7. Halbig alleges that Defendants knew his use of the credit card was accidental and reported it to the Show Low Police Department to destroy his chances in the election. *Id.* at 6-7. He alleges that Butler and Powell adopted and promoted a policy that encouraged individuals to construct false disciplinary allegations against him, to cause his arrest without probable cause, to publicize false information against him, and to create an unwarranted felony arrest record. *Id.* at 8. He has filed several claims under 42 U.S.C. § 1983 and under state law against Butler, Powell, and the Navajo County Sheriff's Office.

## II. Legal standard.

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

## III. Analysis.

Halbig's complaint lists thirteen causes of action – eight federal and five state law claims. The Court will consider the claims in the order they are presented in the first amended complaint.

### A. Claims One and Two.

Halbig alleges that he was deprived of his rights to free association and free political speech by Defendants' retaliatory actions, which included reporting his accidental use of the credit card even when they knew he did not possess the requisite criminal intent. He further alleges that Defendants did so "for the purpose and with the intent of negatively affecting Halbig's likely success in the upcoming Sheriff election" Dkt. #6 at 4.

Defendants argue that Halbig has failed to state either claim. Dkt. #13 at 9-12. Defendants argue that Halbig, in order to show that he has been retaliated against for the exercise of a First Amendment right by arrest or criminal prosecution, must plead and prove

the absence of probable cause supporting the arrest and prosecution. *Id.* at 9 (citing *Hartman v. Moore*, 547 U.S. 250 (1996)). They argue that probable cause clearly existed in this case.

Whether or not Halbig must establish a lack of probable cause to prove a claim based on the criminal prosecution, he need not plead it to state a claim for retaliation based on Defendants' causing him to receive a disciplinary hearing notice, reporting him to the Show Low Police Department, and drafting a press release regarding his arrest. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) ("[A] plaintiff need not plead the absence of probable cause in order to state a claim for retaliation."). Halbig's claims include these other actions of Defendants.

Halbig has alleged these actions would chill or silence an ordinary person from First Amendment activities, and that Defendants took them to cause the chilling effect. He has alleged that Defendants' actions caused him to lose the primary election, which chilled his First Amendment rights to free association and free political speech. Dkt. #6 at 7. This is sufficient to state a claim. *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008).

Defendants claim Plaintiff admitted that "none of his First Amendment retaliation counts . . . are related to the report of criminal misconduct, and associated press release." Dkt. #18 at 5. The Court disagrees. Halbig merely stated in his response that his claim is not based on retaliatory prosecution.

**B.     Claim Three.**

Halbig alleges that Defendants violated his Fourth Amendment rights when they "filed a complaint against Halbig and caused the arrest of Halbig while knowingly or recklessly withholding exculpatory information which, if made known to the individuals and/or entities that arrested Halbig, would have vitiated probable cause." Dkt. #6 at 11. Defendants allege that Halbig has failed to state a claim under the Fourth Amendment because he fails to allege that Defendants had any connection to his arrest. They contend that they merely reported the criminal activity, which is insufficient to make them liable for the arrest. Defendants cite *Torres v. City of Los Angeles*, 540 F.3d 1031, 1040 (9th Cir. 2008), which, they contend,

"held that a detective, who was not present when the suspect was arrested, did not instruct other detectives to arrest the suspect, and was not consulted by other detectives before the arrest occurred lacked the participation necessary to sustain a Fourth Amendment violation." Dkt. #13 at 12-13.

Halbig argues that Defendants should be liable for the arrest as supervisors and integral participants. Dkt. #17 at 8. Defendants, however, were not supervisors of the officers who arrested Halbig or participants in the arrest. The arresting officers worked for the Show Low Police Department, not the Sheriff's Office. Dkt. #6 at 4-5. Halbig does not allege that Defendants had actual supervisory authority over the Show Low Police Department, or that Defendants had an integral participation in the arrest. "[I]ntegral participation requires 'some fundamental involvement in the conduct that allegedly caused the violation[.]'" *Torres*, 548 F.3d at 1040 (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)). The conduct that caused the alleged Fourth Amendment violation was the arrest itself. Because Defendants were not integral participants in the arrest and had no supervisory authority over the Show Low Police Department, Plaintiff has failed to state a Fourth Amendment claim for unlawful seizure against them.

**C. Claim Four.**

Halbig alleges that Defendants violated his First and Fourth Amendment right to be free from malicious prosecution when they filed a complaint against him with the Show Low Police Department which, in turn, caused him to be charged with crimes for which there existed no probable cause. Dkt. #6 at 12. Defendants argue that there are no allegations that they did anything more than make the initial report of criminal activity; they did not actually book or charge Halbig. They also argue the report was supported by probable cause. Dkt. #13 at 13.

Defendants' first two contentions – that the claim cannot stand because Defendants merely made an initial report and did not actually book or charge Halbig – do not negate a claim for malicious prosecution. "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully

caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). The fact that Defendants made the initial report is sufficient to support a claim because they allegedly "wrongfully caused the charges to be filed," even if they did not actually prosecute Halbig themselves. *Id.* at 1066.

Defendants' third contention – that a claim cannot stand because probable cause existed for the charges – does not require dismissal for failure to state a claim. To have probable cause for charges of fraudulent use of a credit card, "proof of intent to defraud is required either in whole or part." Dkt. #13 at 11. Based on Halbig's allegations, Defendants had no proof of intent to defraud, meaning that the Show Low Police Department could have no proof of intent to defraud. Dkt. #6 at 3-4. Moreover, Halbig can rebut a finding of probable cause by pleading facts that show the criminal prosecution was induced by wrongful conduct. *Awabdy*, 368 F.3d at 1067 ("Among the ways that a plaintiff can rebut a *prima facie* finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."). Halbig alleges that Defendants induced the criminal prosecution by claiming he fraudulently used a credit card when they knew he did not have the intent to defraud and when their true purpose was to cause him to lose the election. Based on these allegations of fact, which must be taken as true, Halbig has stated a claim for malicious prosecution.

**D.     Claim Five.**

Halbig alleges that Defendants deprived him of his First Amendment right to be free from adverse employment actions. Defendants argue that Halbig has failed to state this claim because he resigned and was not actually fired from his position at the Navajo County Sheriff's Office. Dkt. #13 at 7. They argue that there must be a termination, a constructive discharge, or some other substantial decision involving promotion, transfer, or recall in order for Halbig to state a claim. They argue that a notice of a future disciplinary hearing is not sufficient to qualify as an adverse employment action.

Notice of a future disciplinary hearing can, under certain circumstances, qualify as an adverse employment decision. The Ninth Circuit has held that "[t]he precise nature of the

1  [adverse employment decision] is not critical to the inquiry in First Amendment retaliation
2  cases. The goal is to prevent, or redress, actions by a government employer that 'chill the
3  exercise of protected' First Amendment rights." *Coszalter v. City of Salem*, 320 F.3d 968,
4  974-75 (9th Cir. 2003). "To constitute an adverse employment action, a government act of
5  retaliation need not be severe and it need not be of a certain kind." *Id.* at 975 (stating that the
6  following allegations were sufficient to constitute an adverse employment action: a plaintiff
7  being banned from attending certain meetings and participating as an evaluator in training
8  exercises; a plaintiff being investigated and receiving an adverse employment report; a
9  plaintiff being suspended from his coaching duties and insulted by his employer).

10  Halbig alleges that he received a notice of a future disciplinary hearing based on a
11  false allegation. Dkt. #6 at 3. Receipt of this notice, Halbig alleges, chilled the exercise of
12  his First Amendment rights and, as a result, constituted an adverse employment action.
13  Taking the facts alleged by Halbig as true, the complaint states a claim for retaliation based
14  on an adverse employment action under the First Amendment.

15  **E.  Claim Six.**

16  Halbig alleges that Defendants deprived him of his substantive due process right to
17  privacy. Dkt. #6 at 15-18. The Ninth Circuit has repeatedly noted, however, that a
18  constitutional right of privacy "protects an 'individual interest in avoiding disclosure of
19  personal matters.'" *Nelson v. NASA*, 530 F.3d 865, 877 (9th Cir. 2008) (quoting *In re
20  Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)). "This interest covers a wide range of personal
21  matters, including sexual activity, medical information, and financial matters." *Id.* (internal
22  citations and parentheticals omitted). It does not include checks, financial statements, deposit
23  slips, or other "information voluntarily conveyed to the banks and exposed to their
24  employees in the ordinary course of business." *Mangum v. Action Collection Serv., Inc.*, 575
25  F.3d 935, 942-43 (9th Cir. 2009) (quoting *United States v. Miller*, 425 U.S. 435, 436-38
26  (1976)). Moreover, "when a person communicates information to a third party even on the
27  understanding that the communication is confidential, he cannot object if the third party
28  conveys that information or records thereof to law enforcement authorities." *Id.* at 943

(citing *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984)).

Halbig claims that he had an expectation of privacy regarding his use of the credit card and the related investigation. Dkt. #6 at 15. As the cases cited above demonstrate, however, Halbig does not have a reasonable expectation of privacy in the financial statements or information related to use of his work-issued credit card, or in an investigation by the Show Low Police Department. This Claim will be dismissed.

**F.     Claim Seven.**

Halbig alleges that Defendants deprived him of his Fourteenth Amendment right to pursue an occupation. Defendants argue that a "due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered," and that there is no "general Fourteenth Amendment-based 'right to pursue an occupation.'" Dkt. #18 at 4.

The Ninth Circuit has recognized a substantive due process right to pursue the occupation of one's choice, and it is a violation of this right that Halbig alleges. *FDIC v. Henderson*, 940 F.2d 465, 474 (1991). "In order to state such a substantive due process claim, [a plaintiff] must show, first, that he is unable to pursue a job in [the profession of his choice], and second, that this inability is due to actions that were clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Henderson*, 940 F.2d at 474 (internal quotations and citations omitted). Halbig alleges that he is unable to pursue a job in the Sheriff's Office, in the law enforcement field, or in many other fields based on his felony arrest record (Dkt. #6 at 17), and that this inability is due to the arbitrary and defamatory actions of Defendants in reporting a simple mistake as a crime so that Halbig would be arrested (*Id.* at 4). These facts sufficiently state a claim.

**G.     Claim Eight.**

Halbig alleges that Defendants have deprived him of his Fourteenth Amendment right to a non-defamed reputation. Defendants assert that there is no substantive due process right to a non-defamed reputation. Dkt. #13 at 14. A substantive due process right to a non-defamed reputation exists only to the extent that the defamation is so severe as to interfere

1 with the "exercise of other fundamental freedoms such as . . . the right to engage in any of
2 the common occupations of life[.]" *Beitzell v. Jeffrey*, 643 F.2d 870, 877 (1st Cir. 1981)
3 (internal quotations and citations omitted); *see Paul v. Davis*, 424 U.S. 693, 706 (1976)
4 ("[T]he Court has never held that the mere defamation of an individual, whether by branding
5 him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process
6 absent an accompanying loss of government employment.").

7 Halbig claims that the defamation in this case caused him to lose his government
8 employment. While this may be sufficient to state a claim, it appears that this claim is
9 identical to Claim Seven. Both are Fourteenth Amendment substantive due process claims,
10 and both allege that Defendants defamed Halbig and thereby caused him to lose his
11 government employment and his ability to seek such employment. Because the right to a
12 non-defamed reputation must rest on another right – such as the right to pursue an occupation
13 – and because Halbig has already claimed that he was deprived of that right in Claim Seven,
14 this claim will be dismissed as duplicitive.

### H. Claims Nine through Thirteen.

16 Defendants assert that Halbig's state law claims cannot stand for two primary reasons:
17 (1) at the time of Defendants' speech, Halbig was a political candidate, and (2) Halbig has
18 failed to submit a notice of claim as a necessary prerequisite to his state law claims. The
19 Court will consider each argument in turn.

#### 1. Political candidate.

21 Defendants contend that Halbig was a public figure when Defendants engaged in the
22 speech at issue, and that Halbig cannot recover unless he proves by clear and convincing
23 evidence that Defendants knew of the falsity of their statements or acted in reckless disregard
24 of its truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). They
25 further argue that this standard applies to all of his state law claims. Dkt. #18 at 9-10. Even
26 if this argument is correct, the Court concludes that Halbig has alleged facts sufficient to
27 show that Defendants knew of the falsity of their statements or acted in reckless disregard
28 of their truth or falsity. He alleges that Defendants reported him for criminal activity that

1  they knew was not criminal activity. Dkt. #6 at 4. He also alleges that Defendants drafted
2  a press release that was false, given that they knew he was not actually guilty of the alleged
3  criminal activity. *Id.* at 6; 19. To the extent *Sullivan* may apply to Halbig's state law claims,
4  and to the extent he must show knowledge of falsity or reckless disregard for truth, Halbig
5  has sufficiently pled his claims.

### 2. Notice of claim.

Under Arizona law, a person who wishes to sue a public entity or employee must first submit a notice of claim that contains "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed," as well as "a specific amount for which the claim can be settled[.]". A.R.S. § 12-821.01(A). "Compliance with the notice provisions of § 12-821.01(A) is a 'mandatory' and 'essential' prerequisite to [a civil action seeking monetary damages]." *Salerno v. Espinoza*, 115 P.3d 626, 629 (Ariz. App. 2005). Halbig submitted a "Notice of Intent To Sue," but Defendants contend that this notice did not contain the amount for which the claim could be settled and was not served on Butler and Powell. The Court does not agree.

Halbig was not required to serve Butler and Powell because he does not make any state-law claims against them. Moreover, the notice stated that Halbig sought $400,000 in damages, which amounted to four years' salary in the Navajo County Sheriff's position. Dkt. #17-1 at 2. Defendants argue that the notice did not say that the dispute could be settled for $400,000, but it seems obvious that if Halbig was planning to sue for $400,000, he would accept that amount in settlement.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Dkt. #13) is **granted in part and denied in part**. Claims Three and Six are dismissed for failure to state a claim, and Claim Eight is dismissed because it duplicates Claim Seven.

2. The Court will schedule a case management conference by separate order.

DATED this 2nd day of February, 2010.

_____
David G. Campbell
United States District Judge